HEDIN HALL LLP
FRANK S. HEDIN
fhedin@hedinhall.com
DAVID W. HALL
dhall@hedinhall.com
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107

BURSOR & FISHER, P.A.
JOSEPH I. MARCHESE
jmarchese@bursor.com
PHILIP L. FRAIETTA
pfraietta@bursor.com
888 Seventh Avenue
New York, New York 10019
Tel: (646) 837-7150

*Counsel for Plaintiff Gary Lin and the Putative Class*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GARY LIN, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>CRAIN COMMUNICATIONS INC.,<br><br>     Defendant. | Case No.: 2:19-cv-11889-VAR-APP<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge: Hon. Victoria A. Roberts |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

ISSUES PRESENTED ............................................................................... v

CONTROLLING AND MOST IMPORTANT AUTHORITIES .......................... vi

INTRODUCTION ..................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ................................................... 4

ARGUMENT ........................................................................................... 6

   I.   Plaintiff has Statutory Standing...................................................... 6

     A.   Defendant Applies the Wrong Choice-of-Law Analysis in the Motion ..... 7

     B.   Plaintiff Has Statutory Standing Because Defendant has Failed to Rebut the Presumption that Michigan Substantive Law Applies......................... 9

     C.   Plaintiff Has Statutory Standing to Assert His Claims Even Under the Outdated Framework Defendant Applies in the Motion ......................... 15

   II.   Plaintiff has Article III Standing ................................................. 22

CONCLUSION....................................................................................... 25

# TABLE OF AUTHORITIES

Page

**Cases**

**United States Supreme Court**

*ASARCO Inc. v. Kadish*,
    490 U.S. 605 (1989) ........................................................................... 22

*Landgraf v. USI Film Prods*.,
    511 U.S. 224 (1994) ............................................................................. 1

*Morrison v. National Australia Bank, N.A*.,
    561 U.S. 247 (2010) ........................................................................... 23

*N.Y. Life Ins. Co. v. Head*,
    234 U.S. 149 (1914) ........................................................................... 17

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ............................................................................. 23

**United States Courts of Appeals**

*Coulter-Owens v. Time Inc*.,
    695 F. App'x 117 (6th Cir. 2017) ................................................. 15, 24

*Eichenberg v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ............................................................. 23

*Gass v. Marriott Hotels Services, Inc*.,
    558 F.3d 419 (6th Cir. 2009) ......................................................... 6, 7, 9

*In re Nickelodeon Consumer Privacy Litig*.,
    827 F.3d 262 (3d Cir. 2016) ............................................................... 23

**United States District Courts**

*Boelter v. Hearst Commc'ns, Inc.*,
    192 F. Supp. 3d 427 (S.D.N.Y. 2016) .................................................. 1

*Boelter v. Hearst Commc'ns, Inc.*,
    269 F. Supp. 3d 172 (S.D.N.Y. 2017) ..................................... 11, 16, 24

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

*Cain v. Redbox Automated Retail, LLC*,
    981 F. Supp. 2d 674 (E.D. Mich. 2013) ............................................................ 18

*Grimwood v. America Airlines, Inc.*,
    323 F. Supp. 3d 928 (E.D. Mich. 2018) ............................................................ 11

*Halaburda v. Bauer Pub. Co., LP*,
    No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) ............. 17, 24

*Horton v. GameStop Corp.*,
    380 F. Supp. 3d 679 (W.D. Mich. 2018).................................................. 1, 15, 24

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................ 21

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011) ........................................................... 21

*In re Refrigerant Compressors Antitrust Litig.*,
    No. 2:09-MD-02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) .............. 21

*Kinder v. Meredith Corp.*,
    No. 14-CV-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) ................. 18

*Owens v. Rodale, Inc.*,
    No. 14-CV-12688, 2015 WL 575004 (E.D. Mich. Feb. 11, 2015) .................... 18

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017) ...................................................... 18, 24

*Wang v. General Motors LLC*,
    371 F. Supp. 3d 407 (E.D. Mich. 2019) ........................................................... 11

**Michigan Supreme Court**

*Olmstead v. Andersen*,
    428 Mich. 1 (1987) ....................................................................................... 7, 8, 9

*Sexton v. Ryder Truck Rental, Inc.*,
    413 Mich. 406 (1982) ................................................................................. passim

*Sutherland v. Kennington Truck Service, Ltd.*,
    454 Mich. 274 (1997) ................................................................................. passim

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

**Michigan Court of Appeals**

*Frydrych v. Wentland*,
   652 N.W.2d 483 (Mich. App. 2002) .................................................................. 12

*Hampshire v. Ford Motor Co.*,
   399 N.W.2d 36 (Mich. App. 1986) ............................................................. 19, 20

*Karaus v. Bank of N.Y. Mellon*,
   831 N.W.2d 897 (Mich. App. 2012) .................................................................. 16

## <u>Statutes</u>

Michigan Personal Preservation of Privacy Act, H.B. 5331, 84th Leg. Reg. Sess.,
   P.A. No. 378, §§ 1-4 (Mich. 1988), *id*. § 5, added by H.B. 4694, 85th Leg. Reg.
   Sess., P.A. No. 206, § 1 (Mich. 1989)...................................................... 1, 13, 15

Michigan Personal Preservation of Privacy Act, S.B. 490, 98th Leg., Reg. Sess.,
   P.A. No. 92 (Mich. 2016)........................................................................................ 1

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

## ISSUES PRESENTED

1.      Under Michigan choice-of-law principals, does Michigan substantive law apply in an action pending in a federal district court sitting in diversity jurisdiction in Michigan where the plaintiff, a non-Michigan resident, alleges claims against a Michigan-based defendant for violating Michigan law based on conduct it allegedly committed from its corporate headquarters in Michigan?

**Plaintiff's Answer: Yes.**

2.      In the action described above in Question No. 1, does the plaintiff have standing to bring statutory claims for violation of Michigan law against the defendant where the plaintiff has adequately alleged all elements of the asserted claims?

**Plaintiff's Answer: Yes.**

3.      Does a disclosure of a plaintiff's personal reading information in violation of the Michigan Personal Preservation of Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id*. § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989), confer a plaintiff alleging such a claim with standing under Article III of the U.S. Constitution?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST IMPORTANT AUTHORITIES

*Olmstead v. Andersen*, 428 Mich. 1 (1987)

*Sexton v. Ryder Truck Rental, Inc*., 413 Mich. 406 (1982)

*Sutherland v. Kennington Truck Service, Ltd*., 454 Mich. 274 (1997)

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Plaintiff Gary Lin, on behalf of himself and others similarly situated, submits this response in opposition to the Motion to Dismiss (ECF No. 10 (the "Motion" or "Mot.")) filed by Defendant Crain Communications Inc. ("Defendant" or "Crain").

## INTRODUCTION

In the operative the First Amended Class Action Complaint (ECF No. 6 (the "Complaint" or "Compl.")), Plaintiff alleges that Defendant, a publishing conglomerate headquartered in Detroit, Michigan, sold, rented, and otherwise disclosed records reflecting his full name, postal address, and the fact that he subscribed to Defendant's *Autoweek* magazine (collectively, "Personal Reading Information") – as well as other highly detailed and sensitive personal and demographic information pertaining to his life – to data brokers, data miners, marketing companies, and other third parties. The Complaint alleges that these disclosures, all of which were made by Defendant from its corporate headquarters in Michigan, violated the Michigan Personal Preservation of Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id*. § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) ("PPPA").[1] The

---

[1]    In May 2016, the Michigan legislature amended the PPPA. *See* S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016) (codified at M.C.L. § 445.1711, *et seq*.). The May 2016 amendment to the PPPA, which became effective on July 31, 2016, does not apply retroactively to claims that accrued prior to its July 31, 2016 effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439-41 (S.D.N.Y. 2016) (holding that "the amendment to the [PP]PA does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued.") (citing *Landgraf v. USI Film Prods*., 511 U.S. 224, 286 (1994)). Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018).

Complaint further alleges that Defendant was unjustly enriched by retaining the money it received from Plaintiff for his *Autoweek* subscription and from the various third parties who purchased his Personal Reading Information from Defendant.

Defendant moves to dismiss the Complaint for lack of both "statutory standing" and "Article III standing" on the grounds that Plaintiff resides in Virginia (not Michigan) and suffered the complained-of harms in Virginia (not Michigan). Defendant is wrong on both fronts.  Plaintiff has both statutory standing and Article III standing to bring his claims in a federal district court sitting in diversity jurisdiction in Michigan, and the Motion should be denied in its entirety.

With respect to statutory standing, Defendant invokes the wrong rubric and incorrectly focuses its choice-of-law analysis on the "place where the injury was suffered." Michigan abandoned that rubric (known as *lex loci delicti*) nearly forty years ago.  Under the correct framework, known as *lex fori*, Michigan substantive law presumptively applies, Plaintiff's residency in Virginia is insufficient to overcome this presumption as a matter of law, and Defendant has not cited to any other out-of-state circumstances capable of rebutting the presumption.  Nor do any such additional out-of-state circumstances exist: Plaintiff's claims arise entirely from conduct and omissions by Defendant at its corporate headquarters in downtown Detroit (including, inter alia, its sale and disclosure of Plaintiff's Personal Reading Information to third parties in Michigan, its failure to obtain Plaintiff's informed consent to such disclosures in Michigan, and its unjust retention of money that Plaintiff paid for his *Autoweek* subscription and that Defendant earned by selling Plaintiff's Personal Reading Information to third-party data brokers in

2

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Michigan). Indeed, on these facts, Michigan law would apply even under the outdated *lex loci delecti* rubric applied by Defendant because the last event necessary to hold Defendant liable for each claim – i.e., its disclosure of Plaintiff's Personal Reading Information and its retention of Plaintiff's subscription fees – both occurred in Michigan. Plaintiff's claims thus plainly arose within Michigan. Because Plaintiff has stated claims against Defendant (a Michigan-resident company) for selling and disclosing his Personal Reading Information (from within Michigan) to third parties in violation of the Michigan PPPA, and for unjustly enriching itself in the process, Plaintiff has statutory standing and the Motion should be denied.

With respect to Article III standing, Defendant gets it wrong at least three times over. First, Defendant conflates statutory standing (a merits question) with Article III standing (a jurisdictional question). Whether Plaintiff's allegations state a claim within the reach of the PPPA reach goes to statutory standing and thus the merits, not Article III standing or the Court's subject-matter jurisdiction. Second, Plaintiff has adequately stated a claim under the PPPA, which the Sixth Circuit and courts nationwide unanimously agree is sufficient, by itself, to confer Article III standing. Third, even if Plaintiff had failed to state a claim under the PPPA, his alleged privacy-related and economic harms would still suffice under Article III.

Simply put: the substantial Michigan-based occurrences underlying this action easily confer Plaintiff with statutory standing under the PPPA, and the nature of the injuries caused by Defendant's misconduct present ample constitutional mooring for Plaintiff to assert his claims in federal court. Plaintiff has statutory standing and Article III standing, and the Motion should be denied.

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

## ALLEGATIONS OF THE COMPLAINT

"Plaintiff Gary Lin is a natural person and a resident and citizen of Virginia. Plaintiff Lin is a long-time subscriber to *Autoweek* magazine and was a subscriber to *Autoweek* magazine between June 25, 2016 and July 30, 2016." Compl. ¶ 13.

"Defendant Crain Communications Inc. is a multi-industry publishing conglomerate. Crain is incorporated in Delaware and maintains its corporate headquarters and principal place of business at 1155 Gratiot Ave, Detroit, Michigan 48207-2732." *Id.* ¶ 14. Crain publishes and sells several nationally-circulated publications, including *Autoweek*, from within Michigan." *See id.* ¶¶ 14, 61-62. Crain collects in Michigan and thereafter deposits in Michigan the money that it has received from Plaintiff and its customers into bank accounts held at financial institutions in Michigan. *See id.* ¶¶ 64, 74.

Crain also maintains a vast digital database comprised of its customers' Personal Reading Information, which it routinely rents, sells, and otherwise discloses to data companies and others. *See id.* ¶¶ 44, 1. Specifically, Crain discloses its customers' Personal Reading Information, from its headquarters in Detroit, Michigan, to data aggregators and appenders who then supplement that information with additional information about Crain's customers, including such intimate and highly-detailed demographic and personal information as its subscribers' ages, genders, incomes, the names of their employers, the industries in which they work, and the list goes on. *See id.* Between June 25, 2016 and July 30, 2016, Crain disclosed Plaintiff's Personal Reading Information, from within Michigan, to data aggregators, data appenders, list brokers, and others. *See id.* ¶ 1.

While Crain profits handsomely from its unauthorized disclosures of its customers' Personal Reading Information and other personal information from within Michigan, it does so at the expense of its customers' privacy and statutory rights because Crain discloses this information from within Michigan and does not obtain any of its customers' written consent prior to disclosing their Personal Reading Information. *See id.* ¶¶ 78. Plaintiff did not receive notice before Crain disclosed his Personal Reading Information to third parties. *See id.* ¶ 79. By disclosing Plaintiff's Personal Reading Information between June 25, 2016 and July 30, 2016 from within Michigan, while it was headquartered in and a citizen of Michigan, Crain invaded Plaintiff's statutorily protected right to privacy in his reading habits in violation of the PPPA from within Michigan. *Id.* ¶ 83.

Additionally, because Plaintiff paid for his subscription to *Autoweek* by remitting payments to Crain that were received by Crain in Michigan, and because Crain was obligated to comply with the PPPA in Michigan, Crain's unlawful disclosures of Plaintiff's Personal Reading Information from within Michigan deprived Plaintiff of the full value of his subscription. *Id.* ¶ 84. Because Plaintiff ascribes monetary value to the privacy of his Personal Reading Information, Crain's unlawful disclosures of his Personal Reading Information from within Michigan, coupled with its retention in Michigan of the money that Plaintiff paid for his subscription, caused Plaintiff to receive less value than he paid for, harming him economically. *Id.*

"Under principles of equity and good conscience, because Crain failed to comply with the PPPA from within Michigan between June 25, 2016 and July 30,

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

2016, Crain should not be allowed to retain in Michigan the full amount of money that Plaintiff . . . paid to and was collected, received, and held by Crain in Michigan for [his] subscription[], nor should Crain be allowed to retain the money that [it] collected and received in Michigan by renting, exchanging, and/or otherwise disclosing Plaintiff's . . . Personal Reading Information from within Michigan[.]" *Id.* ¶ 95. "Moreover, Crain should not be allowed to retain the monies it collected, received, and has thereafter held in Michigan as a result of renting, exchanging, and/or otherwise disclosing Plaintiff's . . . Personal Reading Information from within Michigan between June 25, 2016 and July 30, 2016." *Id.* ¶ 96.

## ARGUMENT

The Complaint alleges that Defendant disclosed Plaintiff's Personal Reading Information pertaining to his purchase of an *Autoweek* subscription to various third parties without the requisite informed written consent, from within Michigan – easily stating PPPA and unjust enrichment claims against Defendant under Michigan law and conferring Plaintiff with statutory standing to assert them. Moreover, Plaintiff has Article III standing to bring his claims in this Court because Defendant's unlawful disclosures invaded his privacy and damaged him monetarily. Plaintiff has statutory and constitutional standing, and the Motion should be denied.

### I.    Plaintiff has Statutory Standing

Pursuant to Michigan's choice-of-law framework – which applies in cases where, as here, a federal district court in Michigan sits in diversity jurisdiction, *see Gass v. Marriott Hotels Services, Inc.*, 558 F.3d 419, 425 (6th Cir. 2009) – the substantive law of Michigan presumptively governs claims brought either by *or*

*against* a Michigan resident, regardless where the underlying tort occurred. *See Olmstead v. Andersen*, 428 Mich. 1 (1987); *accord Gass*, 558 F.3d at 425 (citing *Olmstead*). As discussed below, Defendant has failed to (and cannot) carry its burden to rebut the presumption that Michigan substantive law applies in this case. Accordingly, Plaintiff has "statutory standing" to pursue his claims against Defendant for violation of the PPPA and for unjust enrichment under Michigan law.

## A. Defendant Applies the Wrong Choice-of-Law Analysis in the Motion

As a threshold matter, Defendant's statutory standing argument rests on the faulty premise that Michigan's choice-of-law analysis turns on where Plaintiff "suffered an injury." (Mot. at 1, 3.) That is not, and never has been, the law.

Right out the gates, the Motion focuses entirely on an outdated principal of Michigan law known as *lex loci delicti*, under which the determinative factor in a choice-of-law analysis was the "place of the wrong," i.e., "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Sexton v. Ryder Truck Rental, Inc*., 413 Mich. 406, 420 (1982). But what Defendant fails to mention is that the Michigan Supreme Court rejected the *lex loci delicti* standard nearly four decades ago in favor of the operative *lex fori* standard, which presumes the applicability of Michigan substantive law in all proceedings in Michigan courts. *See Sexton*, 413 Mich. at 433 ("[W]here Michigan residents or corporations doing business in Michigan are involved in accidents in another state and appear as plaintiffs [or] defendants in Michigan courts, the courts will apply the *lex fori*, not

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

the *lex loci delicti*.").[2] Egregiously, Defendant does not even apply the correct version of the outdated *lex loci delicti* standard in the Motion, and has instead unilaterally replaced the phrase "place of the wrong" with "place where the plaintiff suffered an injury." (Mot. at 1.)[3]

As discussed below, Defendant fails to rebut the presumption that Michigan law applies under the operative *lex fori* standard. Moreover, even if the outdated *lex loci delicti* standard controlled, including in Defendant's rewritten form, Michigan

---

[2]     Before 1982, Michigan courts adhered to the traditional *lex loci delicti* rule, but with a host of exceptions to mitigate harsh consequences. *See Sutherland v. Kennington Truck Service, Ltd.*, 454 Mich. 274, 284 (1997). In 1982, the Michigan Supreme Court in *Sexton* abandoned the *lex loci delicti* rule; but because the *Sexton* opinion did not produce a consensus clearly prescribing how the new *lex fori* standard should be applied, "lower courts struggled with its application," particularly in cases where "one of the parties [was] not from Michigan." *Id.* at 285. Then, in 1987, the Michigan Supreme Court resolved "the confusion surrounding *Sexton*" in *Olmstead*, which held that the now well-settled presumption and two-step framework shall apply in all cases regardless of where the parties reside. Tellingly, Defendant's Motion relies entirely on pre-*Olmstead* decisions. *See* Mot. at 4 (relying exclusively on pre-1987 Michigan case law).

[3]     The "place of the wrong" (the determinative factor under the prior *lex loci delicti* standard) is by no means synonymous with "the place where a plaintiff suffered an injury" (as Defendant contends), particularly where, as here, the injury in question is not bodily in nature. As discussed below, where a disclosure of a Virginia resident's Personal Reading Information is made by a company from its headquarters in Michigan, the "place of the wrong" (i.e., the "the state where the last event necessary to make [the company] liable for an alleged [PPPA violation] t[ook] place," *Sexton*, 413 Mich. at 420) is plainly Michigan; Michigan is the state where the disclosure took place and thus Michigan is where the Defendant violated the statute. This is not a case, for instance, where bodily injury is an element of the statute, such as a battery case involving a bullet that was shot from a gun in Michigan and struck a victim in Ohio; in such a case, perhaps Defendant's argument that "place of the wrong" means the same thing as "place where the injury was suffered" would make sense. But this is not such a case, and consequently Defendant's attempt to rewrite the *lex loci delicti* standard does not make any sense (and thus can most charitably be viewed as an attempt to confuse the issues in furtherance of its litigation objectives).

8

substantive law would nonetheless still apply. Regardless of the lens through which the choice-of-law analysis is performed, Michigan substantive law applies in this case and, as such, Plaintiff has statutory standing to assert his claims for violation of the PPPA and unjust enrichment. The Motion should be denied.

### B. Plaintiff Has Statutory Standing Because Defendant has Failed to Rebut the Presumption that Michigan Substantive Law Applies

Under the operative *lex fori* standard, courts applying Michigan choice-of-law rules must begin "with the presumption" that "Michigan law will apply in all . . . actions without regard to whether the plaintiffs and defendants are all Michigan persons unless there is some compelling reason for applying the law of some other jurisdiction, and . . . merely because the injury arose out of an occurrence in another state is not such a reason." *Sutherland*, 454 Mich. at 284-85 (quotation omitted).

Thus, in a case such as this, where a Michigan-headquartered company is named as a defendant in federal district court sitting in diversity jurisdiction in Michigan (and thus subject to Michigan's choice-of-law framework), Michigan substantive law is presumed to apply regardless of where the plaintiff resides or the tort occurred. *See Sutherland*, 454 Mich. at 285; *see also Olmstead*, 428 Mich. at 24 (explaining that under Michigan law, "the fact that the accident took place outside Michigan" is of no "great or particular importance"); *Gass,* 558 F.3d at 425 (explaining that under Michigan law, "the fact that a tort took place outside Michigan is not itself sufficient reason to apply a different state's laws").

In order to rebut the presumption that Michigan substantive law applies under the *lex fori* framework, Defendant bears the burden of establishing that a "reason

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

requires that foreign law supersede the law of [Michigan]." *Sutherland,* 454 Mich. at 285. In determining whether Defendant has met this burden, the Court undertakes a "two-step analysis": <u>First</u>, Defendant must have established that some "foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome." *Id.* at 286. <u>Second</u>, even "[i]f a foreign state does have an interest in having its law applied," Defendant must have further established that Michigan's interests do not "mandate Michigan law be applied, despite the foreign interests." *Id.* In the Motion, Defendant does not even acknowledge the governing *lex fori* framework, much less carry its burden at either step of the analysis to overcome the strong presumption that Michigan law applies.

 <u>First</u>, Defendant fails to establish that Virginia, the only alternative foreign state even mentioned in the Motion, "has an interest in having its law applied." *Sutherland,* 454 Mich. at 286. The only contact Defendant points to between this action and Virginia is that Plaintiff is a Virginia resident. Unsurprisingly, Defendant fails to articulate any interest Virginia might have in applying its law (as opposed to Michigan law) in this case so as to exempt Michigan-based corporations from compliance with the PPPA (and to effectively bless the surreptitious and nonconsensual auctioning-off of its residents' sensitive Personal Reading Information by such entities). *See id.* at 288 (rejecting argument that foreign jurisdiction had countervailing interest in "protecting defendants" from claims). On analogous facts, Michigan's courts (as well as the U.S. Supreme Court) have time and time again held that "the plaintiff's residence, with nothing more, is insufficient

to support the choice of a state's law." *Id*. at 287; *see also, e.g., Wang v. General Motors LLC*, 371 F. Supp. 3d 407, 418 (E.D. Mich. 2019) (explaining that Michigan "no longer follows" *lex loci delicti* and holding that Michigan-based defendant failed to overcome presumption that Michigan law applied to claims that emanated from Michigan headquarters to harm plaintiff located in China). Because Virginia "does not have an interest in the court applying its law" in this case, "the presumption that Michigan law will apply cannot be overcome" by Defendant. *Sutherland,* 454 Mich. at 286.[4]

---

[4]    Just as an out-of-state plaintiff's place of residence is not determinative to the choice-of-law analysis, the state where the defendant resides is not determinative to the analysis either. For instance, a defendant who resides in a state other than Michigan and discloses a Michigan resident's Personal Reading Information from outside of Michigan would surely still be liable under the PPPA for disclosing the Personal Reading Information of that Michigan resident; Michigan undoubtedly has a strong, compelling interest in applying its law to protect its citizens from such disclosures, regardless where they occur, *see, e.g.,* Mot. at 4 n.1 (citing Brief for Intervenor Michigan Attorney General Bill Schuette In Support of the Michigan Preservation of Personal Privacy Act, *Ruppel v. Consumers Union of United States, Inc.*, 7:16-CV-02444 (S.D.N.Y.) (noting that the PPPA "directly protects Michigan citizens against unwanted intrusions into their private affairs, and promotes the pursuit of intellectual and spiritual fulfillment without being subjected to the scrutiny of others . . .")), just as the state also has a strong interest in prohibiting Michigan-based companies from disclosing within its borders the Personal Reading Information of consumers generally, wherever they may reside. Thus, Michigan-based companies' disclosures of non-Michigan residents' Personal Reading Information, made from within the state of Michigan, are covered by the PPPA just the same as non-Michigan-based companies' disclosures of Michigan residents' Personal Reading Information made from outside the state of Michigan. *See, e.g., Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 201-202, 206-07 (S.D.N.Y. 2017) (granting summary judgment in Michigan resident-plaintiff's favor on PPPA claim where out-of-state defendant disclosed her subscription information to data companies); *cf., e.g., Grimwood v. America Airlines, Inc.*, 323 F. Supp. 3d 928, 933 (E.D. Mich. 2018) (holding that although injury occurred in Illinois, claim "gave rise to significant Michigan contacts" which "nonetheless mandate that Michigan law be applied.") & *Wang*, 371 F. Supp. 3d at 418 (Michigan law applied to claims against Michigan-based defendant that emanated from its Michigan headquarters to harm plaintiff located in China). In both scenarios, Michigan has a sufficient interest in

---

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

<u>Second</u>, if Defendant had articulated a colorable interest that Virginia has in applying its law in this case, Defendant has nonetheless failed to establish that any such interest would override the substantial interests that Michigan has in applying its laws – namely, the PPPA and unjust enrichment under its common law – to Defendant's misconduct.  *See id.* at 286 (second step of two-step analysis, under which, Defendant must establish that Michigan's interests do not "mandate Michigan law be applied, despite the foreign interests").  Contrary to Defendant's bald assertion that "[Plaintiff's] claim has no nexus to this state other than his alleged payment to [Defendant]," Mot. at 6, the claims alleged in this action arise from numerous factual circumstances involving Michigan, including but not limited to Defendant's maintenance of its corporate headquarters and principal place of business in Michigan, Defendant's sales and disclosures of Plaintiff's Personal Reading Information from within Michigan, Defendant's collection and unlawful retention in Michigan of the money paid by Plaintiff for his subscription to *Autoweek* (lacking in the requisite privacy protections) and the money paid by third parties to purchase Plaintiff's Personal Reading Information, and Defendant's failure to obtain Plaintiff's prior informed written consent to its disclosures of his Personal Reading

---

regulating the conduct. The same cannot be said, however, of disclosures of non-Michigan residents' Personal Reading Information made by non-Michigan-based companies from outside of Michigan; a disclosure of a non-Michigan resident's Personal Reading Information made from somewhere outside of Michigan by a company residing outside of Michigan is plainly not subject to Michigan law and is thus not actionable under the PPPA. *Cf. Frydrych v. Wentland*, 652 N.W.2d 483, 486 (Mich. App. 2002) ("When a court chooses a state's law, the state must have a significant contact or significant aggregate of contacts that create state interests such that choice of its law is neither arbitrary nor fundamentally unfair. [T]he interest in the litigation is minimal when none of the parties is a Michigan resident.").

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Information in Michigan, *see* Compl. ¶¶ 1, 7, 13, 16, 24, 44-47, 50, 52, 61-67, 71-74, 76-77, 82-84, 86-87, 91-99, 101 – circumstances which not only confirm the significant interests Michigan has in prohibiting and deterring such conduct within its boundaries, but which also dwarf any significant interest that Virginia might have in applying its law in this case instead. Moreover, the PPPA is also aimed at deterring offending disclosures in Michigan, not simply compensating Michigan-based victims of such misconduct. To enforce the statute solely based on where the plaintiff resides, rather than in addition to where the misconduct itself occurred, would "undermine the effectiveness," "regulating force," and ultimately the "public safety" purpose of the statute. *Sexton*, 413 Mich. at 437-438 (to have deterrent effect, Michigan statutes based on conduct "must be quickly, consistently and assuredly applied to the undesirable conduct" so that offenders "are certain they will incur liability" regardless of where consequence of that violative conduct is felt).

The plain language of the PPPA itself – which provides a cause of action to any "person" whose Personal Reading Information has been disclosed in violation of its provisions – confirms that its enforceability does not depend on the plaintiff's place of residence. *See* PPPA § 2 (prohibiting disclosures "to any person, other than the customer, a record or information concerning the purchase … of [written] materials by <u>a customer</u> that indicates the identity of <u>the customer</u>") (emphasis added); PPPA § 1(a) (defining "customer" as "<u>a person</u> who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording"). When the Michigan Legislature intends to limit a statute to Michigan residents, it does so explicitly. *See, e.g.*, M.C.L.A. 493.18 (explicitly stating "that

loans made by mail to Michigan residents are subject to this act").  Having failed to do so in this case, the Michigan legislature clearly did not intend to limit the statute's protections to Michigan residents, to the exclusion of non-Michigan residents whose Personal Reading Information has been disclosed by Michigan-based companies from within Michigan.  Rather, any fair reading of the plain language of the statute confirms that it was written with an eye towards protecting and offering a means of redress to both: (1) Michigan consumers whose Personal Reading Information is disclosed by any company (regardless of the company's residence or the place of the disclosure), *see* PPPA § 2 (prohibiting "<u>a person</u>," without any Michigan-residence limiting language, who is "engaged in the business of selling at retail, renting, or lending . . . written materials" from disclosing a customer's Personal Reading Information); and (2) consumers wherever they reside whose Personal Reading Information is disclosed by a Michigan-based company from within Michigan, *see* PPPA § 1(a) (defining a "customer" protected by the statute as "<u>a person</u>," without any Michigan-residence limiting language, "who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording").[5]

---

[5]    Defendant asserts that "[n]o court has ever permitted a non-Michigan resident to maintain an individual claim under the [PPPA], let alone represent a putative national class." (Mot. at 1.)  That is true, but only because no court has ever been presented with a case, until now, in which a Michigan-based defendant was brazen enough to violate the Michigan PPPA by disclosing its customers' sensitive Personal Reading Information from within the state's boundaries. Thus, because no Michigan-based defendant has ever, until now, been held to account for violating the PPPA from within Michigan, it is also true that no court has ever declined to permit a non-Michigan resident to bring a claim under the PPPA against a Michigan-based defendant who violated the PPPA from within Michigan. Against this backdrop, Defendant's claim that Plaintiff seeks to "dramatically expand the reach" of the statute (*id.* at 1) falls flat.

14

Defendant has failed to satisfy its heavy burden to rebut the presumption that Michigan substantive law applies in this case. As such, Plaintiff has statutory standing to pursue his claims, and the Motion should be denied.

### C. Plaintiff Has Statutory Standing to Assert His Claims Even Under the Outdated Framework Defendant Applies in the Motion

Moreover, even under the outdated *lex loci delicti* standard relied upon by Defendant in the Motion, Michigan substantive law would still govern. Under the *lex loci delicti* standard, the determinative factor in the choice-of-law analysis is the "place of the wrong," i.e., "the state where the last event necessary to make an actor liable for an alleged tort takes place" – a factor which the Motion has misleadingly recharacterized as the place where Plaintiff "suffered an injury," as discussed above (Mot. at 1). *See Sexton*, 413 Mich. at 420.

In this case, the "the last event necessary to make [Defendant] liable for" violating the PPPA was its disclosure of Plaintiff's Personal Reading Information to another person. *See* PPPA § 2 ("[A] person … engaged in the business of selling at retail, renting, or lending books or other written materials … shall not disclose to any person, other than the customer, a record or information concerning the purchase … of those materials by a customer that indicates the identity of the customer."); *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 120-121 (6th Cir. 2017) ("[G]iven that the PPPA contains an express private right to sue, it confers statutory standing on a person whose information was disclosed in violation of it."); *Horton*, 380 F. Supp. 3d at 682. And the state where Defendant's disclosure of Plaintiff's Personal Reading Information "[took] place" was Michigan. Compl. ¶ 1 ("[D]efendant Crain

Communications Inc. [] rented, exchanged, and/or otherwise disclosed personal information about Plaintiff[]'s *Autoweek* magazine subscription, from within the State of Michigan, to data aggregators, data appenders, data cooperatives, and list brokers, among others[.]"); *id.* ¶ 83 ("By disclosing Plaintiff's Personal Reading Information . . . from within Michigan, while it was headquartered in and a citizen of Michigan, Crain invaded Plaintiff's . . . statutorily-protected right to privacy in [his] reading habits in violation of the PPPA from within Michigan."); *id.* ¶ 77 ("The information Crain disclosed from its headquarters in Michigan indicated Plaintiff's name and address, as well as the fact that he subscribed *Autoweek*."); *id.* ¶¶ 7, 13-14, 16, 24, 45-46, 52, 66, 71-73, 76.

Similarly, the "the last event necessary to make [Defendant] liable for" unjust enrichment was its retention of the money it received from Plaintiff as payment for his subscription to *Autoweek* magazine and the money it received from the third parties to whom it sold Plaintiff's Personal Reading Information. *See Boelter*, 269 F. Supp. 3d at 199 ("To state a claim for unjust enrichment under Michigan law, the plaintiff must establish '(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party.'") (quoting *Karaus v. Bank of N.Y. Mellon*, 831 N.W.2d 897, 905 (Mich. App. 2012)) (emphasis added). And the state where Defendant's retention of that money "[took] place" was Michigan. Compl. ¶ 91 ("Plaintiff . . . conferred benefits on Crain in Michigan by providing Crain with [his] Personal Reading Information (which Crain received and stored in Michigan) and by paying Crain for [his] magazine publication subscriptions with money (which

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Crain likewise received, deposited, and has <u>retained in Michigan</u>).”); *id.* ¶ 64 (“. . . <u>Crain collects in Michigan and thereafter deposits in Michigan</u> the money that it receives from its customers . . . <u>into bank accounts held at financial institutions in Michigan</u>.”); *id.* ¶ 74 (“All of the money that Crain received from the third parties to whom it disclosed Plaintiff’s Personal Reading Information was . . . <u>received by Crain at its headquarters in Michigan</u>.”); *id.* ¶¶ 13, 63, 84, 86, 92-93, 95-97, 99.

Thus, because “the last event[s] necessary to make [Defendant] liable” for both violating the PPPA and unjustly enriching itself “t[ook] place” in Michigan, the substantive law of Michigan applies in this case even under the outdated *lex loci delicti* standard relied upon by the Motion. *See Sexton*, 413 Mich. at 420.

Grasping at straws, Defendant argues that “[i]t is fundamental that a plaintiff who does not reside in a state cannot invoke its laws unless he has been injured there.” (Mot. at 3 (citing *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914)).) The argument is nonsense. As discussed above, the place of injury is not and never has been a determinative factor under Michigan’s choice-of-law rubric. But even if the Court were to apply the outdated *lex loci delicti* framework as rewritten by Defendant to its liking – i.e., with the place where the “injury was suffered” being dispositive – the place where the “injury was suffered” in this case would still be Michigan. The only “injury” suffered by Plaintiff in this case in connection with his PPPA claim was the Defendant’s disclosure of his Personal Reading Information to another person, which occurred in Michigan. *See, e.g., Halaburda v. Bauer Pub. Co., LP*, No. 12-CV-12831, 2013 WL 4012827, at *3-5 (E.D. Mich. Aug. 6, 2013) (holding that the PPPA does not require a showing of actual damages, and that a

person whose information is disclosed in violation of the PPPA suffers a cognizable injury in fact by virtue of the disclosure); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 627–28 (E.D. Mich. 2017) (same); *Owens v. Rodale, Inc.*, No. 14-CV-12688, 2015 WL 575004 (E.D. Mich. Feb. 11, 2015) (same); *Kinder v. Meredith Corp.*, No. 14-CV-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) (same); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013) (same). Thus, because Plaintiff's Personal Reading Information was disclosed by Defendant in Michigan, Plaintiff has statutory standing to bring his claim even under the erroneous "place where the injury was suffered" standard that the Motion asks the Court to apply. *See* Compl. ¶ 83 ("By disclosing Plaintiff's Personal Reading Information . . . <u>from within Michigan, while it was headquartered in and a citizen of</u> Michigan, Crain invaded Plaintiff's . . . statutorily-protected right to privacy in [his] reading habits in violation of the PPPA <u>from within Michigan</u>.").[6]

---

[6]    Defendant argues that Plaintiff "cannot establish an injury in Michigan for the purpose of asserting a claim under the [PPPA]" by alleging "that he bought an *Autoweek* subscription from Crain by sending money to its Michigan headquarters[.]" (Mot. at 5.)  That is a gross mischaracterization of both the law and the facts.  For one thing, an "injury in Michigan" is not a prerequisite to Plaintiff establishing statutory standing to bring a claim under Michigan law, for the reasons previously discussed (*see, inter alia, supra* pp. 8-10) – but even if it were, Plaintiff was "injur[ed] in Michigan" by virtue of Defendant's disclosure of his Personal Reading Information from within Michigan, also as previously discussed (*see, inter alia, supra*, pp. 11-18).  The argument is also a straw man because Plaintiff's claims do not depend on an allegation "that he bought an *Autoweek* subscription from Crain by sending money to its Michigan headquarters," as Defendant suggests, but from numerous more significant acts committed by Defendant in Michigan, including but not limited to the liability-triggering act of <u>disclosing Plaintiff's Personal Reading Information from within Michigan</u>, as well as its failure to obtain Plaintiff's informed written consent in Michigan prior to making these disclosures, its retention of the money paid by Plaintiff for a magazine subscription that lacked fundamental privacy protections in Michigan, and its retention of the money it collected from the third parties to whom it disclosed Plaintiff's Personal Reading Information in

In yet another misleading recitation of the law, the Motion pronounces that "Michigan courts have held that Michigan's laws do not extend past its borders" (Mot. at 4), and in support cites to *Sexton* and *Hampshire v. Ford Motor Co.*, 399 N.W.2d 36 (Mich. App. 1986). While it is true that "Michigan's laws do not extend past its borders," in this case Plaintiff seeks to enforce Michigan's laws within its borders, in order to redress a Michigan-based Defendant's disclosures of Personal Reading Information that occurred from its corporate headquarters in downtown Detroit, the same location where it also unjustly retains the money paid by Plaintiff for his subscription and by the third parties to whom Defendant sold Plaintiff's Personal Reading Information concerning his subscription.

Moreover, the passage from *Sexton* quoted on page four of the Motion – "The general rule of law is 'that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction'" – only further reinforces Plaintiff's statutory standing.  In this case, Plaintiff's PPPA claim seeks to "affect, bind, or operate upon" "property" (Plaintiff's Personal Reading Information that Defendant possesses) and a "person[]" (the Defendant) located within (not "beyond") the "territorial jurisdiction" of Michigan.  Defendant is headquartered in Michigan, has retained the money Plaintiff paid for his magazine subscription in Michigan, possessed Plaintiff's Personal Reading Information in

---

Michigan. (*See supra* pp. 13-17.) Faced with these facts, Defendant fails to demonstrate any interest that any other state has in applying its laws in this case that would override the substantial interest Michigan has in protecting consumers generally from conduct committed by companies doing business in its state in violation of its laws, and has accordingly failed to rebut the presumption that Michigan substantive law applies in this case.

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Michigan, and committed the violative disclosures of that Personal Reading Information from within Michigan – and now has the audacity to argue that all of these Michigan-based contacts that underlie Plaintiff's claims are somehow beyond the reach of Michigan law. That makes no sense. On these facts, a more compelling case for the PPPA's application is difficult to imagine under the choice-of-law framework articulated in *Sexton.* In fact, as *Sexton* goes on to explain, where, as here, the Michigan claim at issue is not dependent on any tortious injury to Plaintiff "outside the state" but rather on "strict statutory liability" for conduct of a defendant that "took place exclusively in Michigan," applying that statute even to a plaintiff injured out-of-state as a result of the "chain of events . . . forged in [Michigan]" does not constitute "an extraterritorial application of Michigan law," as a matter of law. *Sexton*, 413 Mich. at 436-437.

The Michigan Court of Appeals' decision in *Hampshire* also firmly supports the sensible notion that a company based in Michigan that violates a Michigan law in Michigan is liable for its unlawful conduct in a Michigan court. Although the court in *Hampshire* found that "Michigan has no significant interest in th[e] litigation" because the "accident occurred in California and the Ford vehicle involved was registered and licensed in California," *Hampshire,* 399 N.W.2d at 38, the facts in this case are materially different. Here, Defendant committed its liability-triggering conduct (disclosing Plaintiff's Personal Reading Information) from its headquarters in Michigan and the instrumentality in question (the Personal Reading Information) was possessed by Defendant at its headquarters in Michigan at the time of its disclosure. Thus, unlike in *Hampshire*, where the "connections to Michigan"

were "limited to the fact that [the defendant's] headquarters are located in Michigan and the action was filed in this state," in this case Michigan was also the epicenter of Defendant's liability-triggering misconduct.  *Id.*

Defendant asserts that "courts often grant motions to dismiss claims asserted by named plaintiffs under the laws of states in which they do not reside" (Mot. at 4), and in support cites to three readily distinguishable anti-trust price fixing decisions in *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011), *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007), and *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012). Each of these cases concerned direct and indirect purchasers of certain consumer products who alleged antitrust claims under various state laws against various defendants for conspiring to allocate markets and fix prices of the product in question. In each decision, the court held that the named plaintiffs lacked standing to assert claims under the laws of certain states because, with respect to each such state, none of the plaintiffs resided in the state, none of the plaintiffs had made any purchases of the subject products in the state, and none of the plaintiffs had alleged the occurrence of any other wrongful conduct relevant to the litigation in the state.

Clearly none of these decisions supports the ill-founded idea (for which they are each cited) that Plaintiff lacks standing to assert his PPPA claim under the laws of Michigan simply because he is a resident of Virginia.  Residence was only relevant to the standing analysis in the three antitrust cases cited in the Motion because the plaintiffs in those cases had purchased the products in question solely

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

from within their states of residence, and because no other interactions had occurred between the defendants and the named plaintiffs in any other states that could possibly confer the plaintiffs with standing to bring claims for violation of those other states' laws (besides the states where the defendants resided). This is a far cry from the situation presented here, where Plaintiff has specifically alleged that Defendant disclosed his Personal Reading Information in Michigan, that Defendant failed to obtain his informed written consent in Michigan prior to making such disclosures in Michigan, that Defendant collected and retained money from Plaintiff for subscription purchases and from third parties who purchased his disclosed Personal Reading Information in Michigan, among numerous other wrongful acts committed by Defendant in Michigan. Such circumstances plainly entitle Plaintiff to assert his claims against Defendant under Michigan law.

Plaintiff has statutory standing, and the Motion should be denied.

## II. Plaintiff has Article III Standing

Defendant additionally argues that Plaintiff lacks Article III standing to bring his PPPA claim in federal court. This argument is also completely without merit.

As a threshold matter, Defendant's argument conflates statutory standing with Article III standing. Whereas a statutory standing challenge contests whether the plaintiff is a proper party to bring a particular claim, Article III standing "in no way depends on the merits of the [claim]," but rather turns on whether the plaintiff has suffered a cognizable injury presenting a genuine case or controversy within the court's subject matter jurisdiction. *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989) (quotation omitted); *Steel Co. v. Citizens for a Better Environment*, 523 U.S.

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

83, 97 (1998) (the "issue of statutory standing . . . has nothing to do with whether there is a case or controversy under Article III").  And the Supreme Court has explicitly rejected as "threshold error" the notion that the purported "extraterritorial reach" of a statute relates at all to Article III standing or other questions of "subject matter jurisdiction."  *See Morrison v. National Australia Bank, N.A.*, 561 U.S. 247, 253-254 (2010). As the Supreme Court has explained, to "ask what conduct" a statute "reaches is to ask what conduct [it] prohibits" and thus "whether the allegations the plaintiff makes entitle him to relief," which is a quintessential merits (not jurisdictional) question.  *Id.*  As such, a plaintiff may have Article III standing even where he lacks statutory standing, because the existence of an injury-in-fact does not depend on the merits of the underlying claim for relief.   *See, e.g., Eichenberg v. ESPN, Inc.*, 876 F.3d 979, (9th Cir. 2017); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (same).

Thus, Plaintiff's Article III standing in this case is beyond question for two primary reasons: (1) he has adequately alleged a PPPA claim (the violation of which is tethered to a concrete interest in privacy), as discussed above, and (2) even if his PPPA claim somehow fails on the merits, he would still have Article III standing because the underlying disclosures nonetheless caused him concrete and particularized harm, both privacy-based and economic.

First, because Plaintiff has stated a claim for violation of the PPPA (as discussed above), he has Article III standing to pursue that claim in this Court because a PPPA violation necessarily results in the nonconsensual dissemination of information reflecting the plaintiff's personal reading choices – an acute invasion of

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

privacy that manifests concrete and particularized harm judiciable in federal court. *See Coulter-Owens*, 695 F. App'x at 120- 21 ("In short, given that the PPPA contains an express private right to sue, it confers statutory standing on a person whose information was disclosed in violation of it. <u>Moreover, the disclosure of that information is a cognizable injury in fact for purposes of Article III standing</u>.") (emphasis added); *Boelter*, 269 F. Supp. 3d at 185 ("[E]very court to consider the issue of standing under the [PP]PA has concluded that such a violation constitutes a concrete injury in and of itself."); *Halaburda*, 2013 WL 4012827, at *3-5 (disclosure of person's information in violation of the PPPA is a cognizable injury-in-fact and confers Article III standing); *Perlin*, 237 F. Supp. 3d at 627–28 (same). Because Plaintiff has adequately alleged a violation of the PPPA, Plaintiff has Article III standing to redress that injury in federal court.

Second, even if Plaintiff had not adequately stated a claim for violation of the PPPA, he would still have Article III standing (and thus remain able to pursue his claim for unjust enrichment), because Defendant's disclosures of his Personal Reading Information invaded his privacy, which has quantifiable monetary value, Compl. ¶¶ 83-85, 88, and because "he would not have been willing to pay as much, if at all, for his *Autoweek* subscription had he known that [Defendant] would disclose his Personal Reading Information." *Id*. ¶ 13. Numerous courts have held such allegations sufficient to confer Article III standing in prior cases where plaintiffs alleged the same two claims for relief (violation of the PPPA and unjust enrichment) alleged by Plaintiff here. *See, e.g., Horton*, 2018 WL 8335635, at *3 ("A consumer's allegation that he would not have bought a product or would have

paid less for a product had certain information been available to the consumer constitutes an economic injury."); *Boelter*, 269 F. Supp. 3d at 186.

Plaintiff has Article III standing, and the Court has subject-matter jurisdiction. The Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied.

Dated: November 11, 2019               Respectfully submitted,

                                       By: /s/ Frank S. Hedin
                                             Frank S. Hedin

                                       Frank S. Hedin
                                       fhedin@hedinhall.com
                                       David W. Hall
                                       dhall@hedinhall.com
                                       **HEDIN HALL LLP**
                                       1395 Brickell Avenue, Suite 1140
                                       Miami, Florida 33131
                                       Tel: (305) 357-2107

                                       Joseph I. Marchese
                                       jmarchese@bursor.com
                                       Philip L. Fraietta
                                       pfraietta@bursor.com
                                       **BURSOR & FISHER, P.A.**
                                       888 Seventh Avenue
                                       New York, New York 10019
                                       Tel: (646) 837-7150

                                       Nick Suciu III
                                       nicksuciu@bmslawyers.com
                                       **BARBAT, MANSOUR & SUCIU PLLC**
                                       1644 Bracken Road
                                       Bloomfield Hills, Michigan 48302
                                       Tel: (313) 303-3472

                                       *Counsel for Plaintiff Gary Lin*

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

## CERTIFICATE OF SERVICE

This is to certify that on November 11, 2019, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

Dated: November 11, 2019      Respectfully submitted,

By: /s/ Frank S. Hedin
     Frank S. Hedin

Frank S. Hedin
fhedin@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107

*Counsel for Plaintiff Gary Lin*