# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GARY LIN, individually and on behalf of all others similarly situated,

    Plaintiff,

vs.

CRAIN COMMUNICATIONS, INC.,

    Defendant.

Case No. 19-cv-11889
Hon. Victoria A. Roberts
Magistrate Anthony P. Patti

_____/

HEDIN HALL LLP
Frank S. Hedin
David W. Hall
1395 Brickell Avenue, Ste. 1140
Miami, FL 33131
(305) 357-2107

BURSOR & FISHER, P.A.
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
(646) 837-7150

*Attorneys for Plaintiff Gary Lin*

HONIGMAN LLP
J. Michael Huget (P39150)
Jeffrey K. Lamb (P76738)
Robert M. Riley (P72290)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000

*Attorneys for Defendant
Crain Communications, Inc.*

_____/

## DEFENDANT CRAIN COMMUNICATIONS, INC.'S
## REPLY IN SUPPORT OF MOTION TO DISMISS

Lin's Response to Crain's Motion to Dismiss focuses primarily on an irrelevant choice of law analysis and glosses over the dispositive issue in a footnote. The threshold question for the Court is whether Lin—a Virginia resident—has standing to assert a claim under the Michigan Preservation of Personal Privacy Act ("PPPA") individually and as the representative of a putative nationwide class. Lin does not have such standing, his PPPA claim is fatally defective, and the Court should dismiss Lin's Amended Complaint with prejudice.

### A.  Lin Concedes that Whether He Has Standing Is a Question of First Impression

Lin concedes that no court has ever permitted a non-Michigan resident to maintain an individual claim under the PPPA. (Resp. Br., p. 14 n5.) More tellingly, every class action for alleged violations of the PPPA has involved a class composed exclusively of Michigan residents[1]:

- *Boelter v. Advance Magazine Publishers Inc.*, Case No. 15-cv-05671 (S.D.N.Y.), involved a class defined as subscribers with a Michigan address and who had magazines delivered to a Michigan address between July 2009 and July 2016.

- *Friske v. Bonnier Corporation*, Case No. 16-cv-12799 (E.D. Mich.), involved a class defined as Michigan residents who subscribed to Bonnier Magazine between July 28, 2010, and June 25, 2019.

- *Edwards v. Hearst Communications*, Case No. 15-cv-09279 (S.D.N.Y.), involved a class defined as persons with a Michigan street address at any time on or before July 30, 2016, and who purchased a subscription to a Hearst publication.

---

[1] Lin's counsel here represented plaintiff classes composed exclusively of Michigan residents in at least three of these cases.

1

- *Moeller v. Advance Magazine Publishers, Inc.*, Case No. 15-cv-05671 (S.D.N.Y.), involved a class defined as persons with a Michigan street address who subscribed to a Condé Nast publication between July 20, 2009, and July 30, 2016, for delivery to a Michigan address.

- *Perlin v. Time Inc.*, Case No. 16-cv-10635 (E.D. Mich.), involved a class defined as all persons with a Michigan street address who subscribed to a Time publication between July 20, 2009, and February 19, 2016.

- *Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812 (S.D.N.Y.), involved a class defined as all persons with a Michigan street address who subscribed to a Trusted Media Brands, Inc. magazine between March 10, 2010, and July 30, 2016, for delivery to a Michigan address.

- *Coulter-Owens v. Time, Inc.*, 695 F. App'x 117 (6th Cir. 2017), involved a class comprised of "all Michigan residents who between March 31, 2009 and November 15, 2013, purchased a subscription to certain Time publications.

- *Raden v. Martha Stewart Living Omnimedia, Inc.*, No. 16-12808, 2017 WL 3085371 (E.D. Mich. July 20, 2017), involved a class comprised of all Michigan residents who purchased a subscription to Martha Stewart Living magazine.

- *Cain v. Redbox Automated Retail, LLC*, 136 F.Supp.3d 824 (E.D. Mich. 2015), involved a class defined as "all Michigan residents who had their Personal Viewing Information disclosed by Redbox to a third party.

In the face of these precedents, Lin argues that he and putative nationwide class members nonetheless have standing because "Defendant is headquartered in Michigan, has retained the money Plaintiff paid . . . in Michigan, possessed Plaintiff's Personal . . . Information in Michigan, and committed the violative disclosures . . . from within Michigan." (Resp. Br., pp. 19-20.)  But the factual analysis Lin proffers is ***exactly the opposite*** of the rubric prior courts applied to hold non-Michigan resident corporate defendants liable for violations of the PPPA as to

Michigan resident plaintiffs. Lin cites no authority—none—to support construing the PPPA in this case in exactly the opposite way as every case that preceded it.

Lin's footnoted policy argument along these same lines is similarly unavailing. (Resp. Br., p.11 n4 ("Thus Michigan-based companies' disclosures of non-Michigan residents' Personal Reading Information, made from within the state of Michigan, are covered by the PPPA just the same as non-Michigan-based companies' disclosures of Michigan residents' Personal Reading Information made from outside the State of Michigan.").) The cases Lin cites to support this sweeping pronouncement—*Grimwood v. American Airlines, Inc.*, 323 F. Supp. 3d 928 (E.D. Mich. 2018), and *Wang v. General Motors LLC*, 371 F. Supp. 3d 408 (E.D. Mich. 2019)—both applied Michigan law to claims pled by ***Michigan-resident plaintiffs***. And neither considered whether the plaintiffs in those cases had statutory standing.

In sum, not a single PPPA class action has been filed by a non-Michigan resident, nor has a court certified a PPPA class that includes a non-resident member. This Court should not be the first to allow a PPPA claim by a non-Michigan resident to advance past the pleading stage.

> **B.  Only "Customers" Have Standing to Sue under the PPPA, Not "Persons" as Lin Wrongly Asserts**

To have statutory standing, the statute in question must create a cause of action through which the plaintiff can vindicate his or her rights. *Cox v. Blue Cross Blue Shield of Michigan*, 166 F. Supp. 3d 891, 894-95 (E.D. Mich. 2015). Here, the PPPA

3

does not specifically provide a cause of action to non-Michigan residents, or even "persons." Rather, M.C.L.A. § 445.1715 provides a cause of action to "customers":

> Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages *to the customer* identified in a record or other information that is disclosed in violation of this act . . . . [Emphasis added.]

Section 445.1711(a) defines "customer" as:

> a person who purchases, rents, or borrows a book or other written material, or a sound record, or a video recording.

Only a "customer" may bring a PPPA action. And the scope of "customer" under the PPPA has been narrowly interpreted by the Michigan Supreme Court and the Sixth Circuit. *In re Certified Question from the United States Court of Appeals for the Ninth Circuit (Deacon v. Pandora Media, Inc.)*, 885 N.W.2d 628, 631 (Mich. 2016); *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 123 (6th Cir. 2017).

In *Certified Question*, the Michigan-resident plaintiff sued a Delaware corporation for PPPA violations. The district court dismissed the case. On appeal, the Ninth Circuit certified to the Michigan Supreme Court the question of whether the plaintiff was a "customer" within the meaning of the PPPA. *Id.* at 630. The Michigan Supreme Court held that the plaintiff had neither rented nor borrowed a sound recording from the defendant and thus could not assert a claim under the PPPA. In so holding, the court narrowly interpreted "customer" and limited the

4

scope of who can maintain a PPPA claim. *Id*. at 631. The Ninth Circuit then dismissed the plaintiff's claim. *Deacon v. Pandora Media, Inc.*, 655 F. App'x 581.

In *Coulter-Owens*, the Sixth Circuit also limited the scope of plaintiffs who are "customers" under the PPPA. The court narrowly interpreted the PPPA to include only those "customers" who purchase subscriptions "at retail," i.e. directly from the defendant publisher. 695 F. App'x at 123 (affirming summary judgment of the plaintiff's claims and holding that "The PPPA includes the phrase 'at retail.' That phrase has to mean something and at a minimum it means that some types of sales must be 'nonretail,' which are consequently excluded.").

Here Lin attempts to greatly expand the PPPA's scope, arguing the PPPA "provides a cause of action to any person whose personal reading information has been disclosed" regardless of residency. (Resp. Br., p. 13.) This unsupported broad interpretation of "customer" under the PPPA is inconsistent with the precedents above that repeatedly narrowed the PPPA's reach. It also contradicts multiple other precedents that limit state statutory claims to residents of the applicable state and hold that a named plaintiff must have standing to represent a putative class:

- *Sexton v. Ryder Truck Rental, Inc.*, 320 N.W.2d 843, 854 (Mich. 1982), which held that Michigan's laws do not extend past its borders to protect non-Michigan residents.

- *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012), holding impermissible exactly what Lin is attempting to do here: asserting a claim based on the law of a state in which a plaintiff does not reside.

5

- *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2008) (holding that "class representatives without personal standing cannot predicate standing on injuries suffered by members of the class but which they themselves have not or will not suffer.").

Moreover, Lin's argument that *Sexton* actually counsels in favor of Lin having standing here misreads that decision. (Resp. Br., p. 19.)  In *Sexton*, like here, the non-resident plaintiffs pled statutory claims and the operative statutes did not explicitly limit their application to Michigan residents; rather, the statutes applied to "owners" of motor vehicles and aircrafts.[2]  320 N.W.2d. at 855, 856.  The *Sexton* court held that those Michigan statutes should not be given extraterritorial effect and dismissed plaintiffs claims because, "a statute is prima facie operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it.  These rules apply to a statute using general words, such as 'any' or 'all,' in describing the persons or acts to which the statute applies."  *Id*. at 855.[3]

---

[2] Lin claims that "person" should be broadly interpreted under the PPPA because the Michigan legislature explicitly defined "person" to only include Michigan residents in the Regulatory Loan Act, M.C.L.A. § 493.1 *et seq*.  This is a non sequitur.  That the legislature adopted a "belt and suspenders" approach to expressly limit the application of a different statute to Michigan residents, does not mean that the Court here should disregard the underlying case law generally forbidding extraterritorial application of the PPPA.

[3] *Pevets v. Crain Communications, Inc.*, No. OT-10-023, cited in Lin's Notice of Supplemental Authority (Dkt. #15), is equally unavailing.  *Pevets* did not involve a PPPA claim or consider whether the named plaintiff had statutory standing.  It has no bearing on Crain's Motion to Dismiss.

6

The case law is clear: there is no basis to expand the PPPA's statutory reach to claims asserted by non-Michigan residents and this Court should not do it here.

### C. Lin's Unjust Enrichment Claim Fails with His PPPA Claim

For the same reasons that Lin cannot maintain his PPPA claim, the Court should dismiss his unjust enrichment claim. The unjust enrichment claim is based entirely on alleged violations of the PPPA. (Pl.'s First Am. Compl., ¶ 94 ("Under the PPPA, Plaintiff and the Class Members were entitled to have Crain keep confidential their Personal Reading Information . . . ."); ¶ 95 ("Under principles of equity and good conscience, because Crain failed to comply with the PPPA . . . Crain should not be allowed to retain [money] in Michigan . . . ."); see also *id*. ¶¶ 96-99.) In other words, the only "unjust" acts Lin pled are alleged violations of the PPPA. Accordingly, Lin's unjust enrichment claim fails with his statutory claim. Further, even if the court found Lin's unjust enrichment claim did not depend on his defective PPPA claim, Lin has failed to plead any facts to establish the amount in controversy threshold—neither $75,000 individually, nor $5 million in the aggregate—to satisfy diversity jurisdiction requirements for this claim.

For these reasons and those set forth in Crain's opening brief, the Court should dismiss Lin's claims with prejudice.

                                      Respectfully submitted,

                                      By:   /s/ Robert M. Riley
                                              Robert M. Riley (P72290)

## **CERTIFICATE OF SERVICE**

This is to certify that on December 20, 2019, a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system which will send notification to all counsel of record.

                                        Respectfully submitted,

                                        HONIGMAN LLP

                                        By: /s/ Robert M. Riley
                                              Robert M. Riley (P72290)
                                        2290 First National Building
                                        660 Woodward Avenue
                                        Detroit, MI 48226-3506
                                        (313) 465-7000
                                        rriley@honigman.com

Dated: December 20, 2019