UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY LIN, individually and on
behalf of all others similarly
situated,

    Plaintiff,

v.

Case No. 19-11889
Honorable Victoria A. Roberts
Mag. Judge Anthony P. Patti

CRAIN COMMUNICATIONS INC.,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [ECF No. 10]**

### I.    INTRODUCTION

Plaintiff Gary Lin ("Lin") filed this class action complaint alleging that Defendant Crain Communication, Inc. ("Crain") violated Michigan's Personal Privacy Protection Act, M.C.L. § 445.1712 ("PPPA"), and was unjustly enriched by disclosing sensitive and statutorily protected information to third parties.

Lin alleges that Crain disclosed Personal Reading Information ("PRI") to data mining companies in violation of the PPPA. [ECF No. 6, PageID.60, ¶ 9]. Lin also contends that Crain sold "highly detailed customer lists,"

1

including sensitive information, about him and others to interested third parties. [ECF No. 6, PageID.68, ¶ 28].

For the reasons stated below, the Court **DENIES** Crain's motion to dismiss.

II.   **BACKGROUND**

   **A. Procedural Background**

On June 25, 2019, Lin filed this putative class action on behalf of himself and others who allegedly had their PRI disclosed to third parties by Crain without consent. Crain moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

   **B. Factual Background**

Crain is a multi-industry publishing conglomerate. It is incorporated in Delaware and maintains its corporate headquarters and principal place of business in Detroit, Michigan. [ECF No. 6, PageID.66, ¶ 14]. In Michigan, Crain publishes and sells several nationally-circulated publications, including *Autoweek*. [ECF No. 6, PageID.80, ¶ 61-62].

According to Lin, Crain maintains a vast digital database comprised of customers' PRI, which includes "subscriber's full name, home address, and the title of the Crain publication(s) to which he or she subscribes." [ECF No. 6, PageID.60, ¶ 9]. Lin says Crain discloses this PRI to data

aggregators and appenders who then supplement it with intimate and highly-detailed demographic and personal information about customers, including subscriber ages, genders, incomes, the names of their employers, and the industries in which they work, etc. [ECF No. 6, PageID.74, ¶ 44]. Lin alleges that Crain allows almost any organization to rent a customer list that contains numerous categories of detailed customer information. [ECF No. 6, PageID.60, ¶ 11]. According to Lin, Crain never requires an individual to read or agree to any terms of service, privacy policy, or information-sharing policy, and fails to obtain any consent from – or provide effective notice to – its subscribers before disclosing their PRI. [ECF No. 6, PageID.76, ¶ 50].

Lin is a citizen of Virginia; he subscribes to Crain's magazine. [ECF No. 6, PageID.59, ¶ 7]. Lin says Crain did at least these three things in violation of the PPPA: (1) disclosed mailing lists containing Lin's PRI to data aggregators and data appenders, who then supplemented the mailing lists with additional sensitive information from their own databases, before sending the mailing lists back to Crain; (2) disclosed mailing lists containing Lin's PRI to data cooperatives, which in turn gave Crain access to their own mailing list databases; and (3) rented and/or exchanged its mailing lists containing Lin's PRI—enhanced with additional information from data

aggregators and appenders—to third parties. [ECF No. 6, PageID.82, ¶ 70-73].

Lin paid for his subscriptions. He says he ascribed value to the privacy of his PRI, and its sale and disclosure caused him to receive less value than he had paid for in his subscription costs. Lin says he would not have been willing to purchase subscriptions at the full price charged, if at all, had Crain adequately informed him of its disclosure practices. [ECF No. 6, PageID.84, ¶ 86]. Moreover, Crain's disclosure of Lin's PRI to third parties caused an influx of junk mail and marketing calls. [ECF No. 6, PageID.61, ¶ 13].

**C. Michigan PPPA**

In 1988, Michigan enacted the PPPA shortly after the enactment of the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Congress passed the VPPA to "preserve personal privacy with respect to rental, purchase, or delivery of video tapes or similar audio-visual materials," S. Rep. No. 100-599, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-1.

Like the VPPA, Michigan's bill aims to "preserve personal privacy with respect to the purchase, rental, or borrowing" of written materials, sound recordings, and video recordings. 1988 Mich. Pub. Acts No. 378 at p. 1559. The PPPA addresses many concerns related to an "unwarranted invasion of

4

privacy." House Legislative Analysis, Privacy: Sales, Rentals of Videos, Etc., H.B. 5331, (Jan. 20, 1989) ("Many in Michigan also believe that one's choice in videos, records, and books is nobody's business but one's own, and suggest the enactment of a statute to explicitly protect a consumer's privacy in buying and borrowing such items").

In 2016, the Michigan legislature amended the PPPA. Mich. Comp. Laws § 445.1711 *et seq.*). However, the Court reviews the PPPA prior to its 2016 amendment because Crain's alleged wrongful disclosures preceded the amended statute's enactment. The subsequent amendments do not apply retroactively to claims that accrued prior to its effective date. *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) ("The new PPPA does not contain any express statement of intended retroactivity … and given the extensive substantive changes … it cannot be viewed as merely a "clarifying" amendment intended for retroactive application.")

The PPPA, prior to its amendment, prohibited persons "engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings" from disclosing material "to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." PPPA § 2. A "record or information"

5

could be disclosed only in circumstances listed in Section Three of the PPPA. Prior to the amendment, those exceptions included disclosure "[w]ith the written permission of the customer"; "[p]ursuant to a court order" or "a search warrant"; "[t]o the extent reasonably necessary to collect payment for the materials"; and for the "exclusive purpose of marketing goods and services directly to the consumer," if the disclosing party informed "the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." *Id.* § 3.

A customer "identified in a record or other information disclosed in violation" of the PPPA can sue to recover "[a]ctual damages, including damages for emotional distress, or $5,000, whichever is greater." PPPA § 5.

### III. LEGAL STANDARDS

**A. Fed. R. Civ. P. 12(b)(1)**

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) where the court lacks subject matter jurisdiction over a plaintiff's claim. If a Rule 12(b)(1) motion challenges the court's subject matter jurisdiction based on the sufficiency of the pleadings' allegations, the motion is a facial attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In reviewing a Rule 12(b)(1) facial attack, the court must accept all material allegations as true

6

and construe them in a light most favorable to the non-moving party. *Id*. The court should review 12(b)(1) challenges before others. *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988).

Crain's 12(b)(1) challenge to standing consists of "facial" attacks on the court's subject matter jurisdiction. This places the burden on Lin to show jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005); *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

**B. Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. The federal rules require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds"

7

of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *Twombly*, 550 U.S. at 555 (while detailed factual allegations are not required, a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action"). Ultimately, the question is "'not whether [the plaintiff] will ultimately prevail' . . . but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citations omitted).

In deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pled factual allegations, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

## IV. ANALYSIS

### A. Lin Has Standing To Bring Suit Under the PPPA

Crain argues that Lin lacks both statutory standing under the PPPA and Article III standing under the United States Constitution.

8

"[A] plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007).

### 1. Statutory Standing

Crain contends: (1) the PPPA protects only Michigan residents, precluding Lin from seeking relief; and (2) Lin does not make a claim for damages.

#### a. Non-Residents of Michigan Are Protected By The PPPA

Crain argues that Lin cannot seek relief under the PPPA for alleged violations of his personal privacy interests. Crain's argument rests solely on the fact that a non-Michigan resident has never brought suit under the PPPA. This is unpersuasive and contravened by the language of the statute and case law.

The Michigan Supreme Court has not addressed whether a non-Michigan resident may sue a Michigan-resident defendant under the PPPA. The Court looks to the statutory construction of the PPPA and relevant case law to determine whether Lin has statutory standing to bring suit under the PPPA.

Statutory construction is a question of law. *In re MCI*, 460 Mich. 396, 413 (1999). In analyzing this issue, "[t]he fundamental rule of statutory construction is to give effect to the Legislature's intent." *Farrington v. Total Petroleum, Inc.*, 442 Mich. 201, 212 (1993). "If the statutory language is clear and unambiguous, then we conclude that the Legislature intended the meaning it clearly and unambiguously expressed, and the statute is enforced as written. *Huggett v. Dep't of Nat. Res.*, 464 Mich. 711, 717 (2001); *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014) ("Under Michigan law, statutory interpretation requires an examination of the plain language of the statute.").

The plain language of the PPPA provides a cause of action for customers whose information is disclosed in violation of it. *See* M.C.L. § 445.1711(a) (customer defined as "a person who purchases, rents, or borrows a book or other written material, or a sound record, or a video recording"). Clearly, the PPPA does not impose a residency requirement for customers to have protections under the statute.

For its argument, Crain relies on the presumption that a non-Michigan customer cannot bring suit under the PPPA because every class action for alleged violations of the PPPA has involved a class comprised of

10

exclusively Michigan residents. But, a legislative purpose that articulates an interest in protecting those within Michigan is not inconsistent with also allowing non-Michigan residents to pursue claims against Michigan resident-defendants. To conclude otherwise would imply that the Michigan Legislature intended to protect in-state parties under the PPPA while simultaneously allowing Michigan residents to violate the PPPA with respect to out-of-state residents and entities within its borders.

The Court declines to accept such an interpretation. If the Michigan legislature intended to limit the statute to Michigan residents, it could have done so explicitly. *See, e.g.,* M.C.L. § 493.18 ("loans made by mail to Michigan residents are subject to this act").

Crain says that Lin lacks standing. It does not contend that Lin has another venue to pursue his grievance. Perhaps Crain believes that Lin has no cause of action at all.

It is hard to know what Crain's position is, but Lin presumes that Crain believes Lin should avail himself under Virginia law. Accordingly – in his response – Lin does a choice of law analysis, which concludes by saying Michigan has a greater interest in enforcing any claim he would have against a Michigan corporation.

11

Crain never makes a choice of law argument in its motion or brief and fails to address Lin's argument in its reply brief. Instead, Crain concludes in its reply that Lin focuses on "an irrelevant choice of law analysis." [ECF No. 17, PageID.194]. This type of response confirms that Crain never intended a choice of law argument, but that it believes Lin has no cause of action against it because he is not a resident of Michigan.

The Court finds that Lin waived any choice of law argument that may have been available to it. More importantly, Crain's argument that Lin has no statutory standing is without merit.

### b. Lin alleges damages sufficient to survive a FRCP 12(b)(6) Challenge

Crain argues that "Lin's claim has no nexus to this state other than his alleged payment to Crain." [ECF No. 6, PageID.122]. This is not true. Lin alleges that Crain disclosed his PRI to data mining companies in violation of the PPPA. [ECF No. 6, PageID.60, ¶ 9]. He also contends that Crain sold "highly detailed customer lists," including sensitive information, about him and others to interested third parties. [ECF No. 6, PageID.68, ¶ 28].

To allege statutory standing under the PPPA, Lin must allege that his information was disclosed in violation of the statute. *See Coulter-Owens*,

12

695 F. App'x at 121 ("given that the PPPA contains an express private right to sue, it confers statutory standing on a person whose information was disclosed in violation of it"). Lin's allegations are sufficient for standing purposes.

In addition, much of the alleged misconduct occurred in Michigan. Lin seeks to recover damages based on the alleged disclosure and sale of PRI by a Michigan based company from its Michigan offices. *See Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 707 (W.D. Tenn. 2006).

Michigan has a substantial interest in this matter because Crain is one of its corporate domiciliaries. *In re Aircrash Disaster Near Monroe, Michigan*, 20 F. Supp. 2d 1110, 1112 (E.D. Mich. 1998) ("Michigan has a predominant interest in protecting the financial integrity of corporations who conduct substantial business within its borders because this enables its citizenry to earn livelihoods").

Given the broad definition of "customer" and the absence of a limitation in the legislative text, the Court finds Lin has statutory standing to the extent the alleged disclosure and sale of his PRI took place in Michigan.

### 2. Article III Standing

Crain says Lin did not suffer an invasion of a legally protected privacy interest under Michigan law because a non-Michigan resident plaintiff does not have a privacy interest that is protected by the PPPA and therefore cannot show the requisite injury for Article III standing.

Lin alleges Crain violated his protected privacy interest by disclosing PRI to data-mining companies and third-party database cooperatives, making his subscription without privacy protections substantially less valuable than subscriptions with privacy protections.

Crain brings a facial challenge to Lin's standing under Article III pursuant Fed. R. Civ. P. 12(b)(1).

To establish standing, a plaintiff must show that: (1) he has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) the injury is "fairly ... trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted).

An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016). An injury is concrete if it is "real, and not abstract." *Id.* at 1548. An

14

"intangible" harm may also be concrete where it is a *de facto* harm that the legislature has "identif[ied] and elevat[ed]" such that individuals may seek relief when they suffer a harm. *See id.*

In finding that a plaintiff had Article III standing under the PPPA, the Sixth Circuit stated, "the disclosure of that information [PRI] is a cognizable injury in fact for purposes of Article III standing." *Coulter-Owens*, 695 F. App'x at 121.

Taking Lin's allegations as true, the alleged economic harm caused by the disclosure of PRI provides support to conclude Lin suffered a concrete injury. *See Boelter v. Hearst Commc'ns, Inc., 192 F.* Supp. 3d 427 (S.D.N.Y. 2016). The alleged violation of Michigan's PPPA implicates his "concrete interest" in the disclosure of his PRI without permission. *Lujan*, 504 U.S. at 572. The PPPA gives Lin a legally protected interest in the privacy of his reading choices.

Federal district courts in Michigan have consistently come to the same conclusion. *See Perlin v. Time, Inc.*, 237 F. Supp. 3d 623, 640–41 (E.D. Mich. Feb. 25, 2017) (holding that [PPPA] violation is "not a 'bare procedural violation,' but rather a violation of the [PPPA's] substantive core" and "the right guaranteed by the [PPPA] is similar in kind to other privacy

15

rights that were gradually recognized by American courts over the course of the last century"); *Moeller v. American Media, Inc. et al.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. Jan. 27, 2017) ("Subscribers' right to privacy in their personal-reading information is grounded in an interest 'traditionally regarded as providing a basis for a lawsuit in English or American courts.' ... And because the alleged violation of the Michigan PPPA here implicates plaintiffs' 'concrete interest' in the nondisclosure of their personal information without their permission, they have adequately pled a concrete injury-in-fact.") (citations omitted).

The Court must accept all of Lin's allegations as true. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (the court "take[s] the allegations in the complaint as true"). And, they are sufficient to establish that Lin has Article III standing to sue Crain.

### B. Belatedly, Crain Seeks Dismissal of Lin's Unjust Enrichment Claim

Nowhere in its motion to dismiss does Crain seek dismissal of Lin's unjust enrichment claim.

But, Crain attempts to make new arguments and raise issues in its reply brief that it neglected to address in its motion to dismiss, and argues for the

16

first time in its reply brief that Lin's unjust enrichment claim should be dismissed.

The Court declines to consider the newly-raised arguments in Crain's reply brief. *See Malin v. JPMorgan,* 860 F.Supp.2d 574, 578 (E.D. Tenn. 2012) (E.D.Tenn.2012) ("[A] movant cannot raise new issues for the first time in a reply brief because consideration of such issues deprives the non-moving party of its opportunity to address the new arguments.") (internal quotation marks omitted).

## V. CONLUSION

Lin has standing to bring suit under the PPPA. Crain's motion to dismiss [ECF No. 10] is **DENIED**. Crain must file an answer to the Amended Complaint within fourteen days of entry of this Order.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: 1/16/2020